IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEVIN BRIGGS,

    Plaintiff,

v.

WILLIE PEARL BURRELL and DEREK S. BURRELL,

    Defendants.

CIVIL ACTION NO.
1:02-CV-2442-JEC

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 18 2006

LUTHER D. THOMAS, Clerk
By: [signature] Deputy Clerk

### ORDER

This contentious litigation has had a protracted and complicated history before this Court. The plaintiff and defendant Willie Burrell had previously been associated together in a joint entertainment business. The plaintiff was a song writer of popular music; defendant Willie Burrell was the manager of the business. The rancorous dissolution of this business relationship led to the litigation before this Court. Although the matter was arbitrated and believed to have been settled, defendant Willie Burrell has refused to pay her portion of fees and expenses that she had agreed to pay as a condition of the arbitration, as well as the attorney's fees she owes her lawyers. The Court addresses that refusal in this Order.

AO 72A
(Rev.8/82)

## **BACKGROUND**

A brief background of the proceedings indicates the contentiousness of the litigation. The action was filed on September 4, 2002, at which time the plaintiff filed his Complaint and also sought, through a request for a temporary restraining order, the Court's assistance in obtaining the cooperation of the defendants in an ongoing arbitration proceeding involving defendant Derek Burrell [1-12]. Thereafter, on September 17, 2002, this Court held a hearing and issued an Order [13-14] that, among other things, directed defendant Willie Pearl Burrell to cooperate and provide requested documents in the ongoing arbitration concerning her son, defendant Derek Burrell's termination.

The Order did not bring resolution, as shortly thereafter the plaintiff filed a motion for contempt against defendant Derek S. Burrell for non-compliance with the Court's just-issued Order [15]. The litigation continued on disharmoniously, as evidenced by the filing of several other motions, including another motion for contempt by plaintiff against defendant Derek Burrell [37]; a motion for contempt filed by defendant Willie Burrell against the plaintiff [38]; and a motion by plaintiff for sanctions against defendant Willie Burrell, as a result of her failure to produce documents in response in violation of the Court's Orders of September 20, 2002, and October 18, 2002 [48].

2

On August 27, 2003, at which time the extended discovery period should have concluded, the Court held an omnibus hearing to consider the numerous motions and discovery disputes that remained pending. Following a lengthy hearing on that date, the Court ruled on the various disputes and, among other things, directed defendant Willie Burrell to cooperate in the disclosure of documentary discovery that had been repeatedly requested by the plaintiff [70;71]. Summary judgment motions were to be filed in early January 2004. *Id.*

On November 14, 2003, the plaintiff filed another motion for contempt against defendant Derek Burrell for non-compliance with this Court's Order [72]. Given plaintiff's continuing complaints about difficulty in receiving discovery, summary judgment motions were not filed in January 2004. Instead, on March 29, 2004, the plaintiff filed a motion for sanctions against Willie Burrell [79,80] and on April 9, 2004, defendant Willie Burrell filed her own motion for sanctions [82].

The litigation continued on in this unproductive manner for some time. *See* Documents 83-122. In March, 2005, defendant Willie Burrell's original attorneys withdrew from the case [123, 128], and she proceeded *pro se* [126].

On May 25, 2005, this Court denied the plaintiff's pending motion for summary judgment and also denied defendant Willie Burrell's motion for a stay [130]. At this juncture, it was apparent

3

that discovery disputes continued and that the documentary evidence involved in litigating the case would be voluminous. In short, litigation of the matter would be quite costly and, given the state of disorder in the records, quite confusing to a finder of fact. The Court therefore directed the parties to submit a memorandum setting out their position on a method to dispose of the case and, if a trial were required, to file a pretrial order [131].

On June 13, 2005, defendant Willie Burrell filed a motion for arbitration [135]. The Court set a telephone conference for June 23, 2005. At that conference, the parties appeared to be in agreement that they would arbitrate the case. Accordingly, the Court directed defendant Willie Burrell to submit up to five names of proposed arbitrators to the plaintiff by July 15, 2005; if the parties could not agree on an arbitrator, they were to notify the Court [138]. Another telephone conference was set for June 29, 2005 [138].

Notwithstanding that the litigation was moving toward arbitration--an arbitration that had been suggested by defendant Willie Burrell--the latter filed a motion for reconsideration of the Court's earlier order dismissing her counterclaim [140]. The Court held the previously-set telephone conference on June 29, 2005 and orally denied defendant Willie Burrell's motion for reconsideration [141]. The Court set another telephone conference for July 7, 2005 and directed the plaintiff to forward the revised proposed

arbitration agreement to the Court by July 1, 2005.

At some point in this process, either at the June 23rd telephone conference or at one of the later telephone conferences, counsel Joseph J. Madonia appeared on behalf of defendant Burrell. As these proceedings have not been transcribed for the Court, the undersigned cannot determine precisely when Mr. Madonia entered the proceedings. The Court does recall that Mr. Madonia indicated that he only wanted to represent defendant Burrell if the case went to arbitration, but that should the case proceed to trial, Mr. Madonia would not represent the defendant. Accordingly, he requested that he not be required to file a formal notice of appearance, which request this Court granted.

The minute entries for the docket reflect that, on July 7, 2005, another telephone conference was held to resolve any lingering disputes over the procedures to be employed in arbitrating the case [143]. The result of that conference was that plaintiff's and defendant's counsel were to attempt to decide on the name(s) of arbitrators, and another telephone conference with the Court would be held [144]. A subsequent conference did occur on July 19, 2005, and the Court indicated that the proposed Order for binding arbitration should be presented by July 28, 2005 for the Court's signature [146].

The proposed order not being presented by July 28th, another telephone conference was scheduled for August 3, 2005. This

5

conference was cancelled, however, upon the submission of a Consent Order for binding arbitration, which Order this Court signed. The Consent Order will be discussed in detail, *infra*. The Court entered an Order administratively terminating the action, pending the conclusion of the arbitration proceedings [152].

**TERMS OF THE ARBITRATION AGREED UPON BY THE PARTIES**

The Consent Order agreed to by the parties and signed by this Court indicated that the arbitration would be conducted in Atlanta before the Honorable Philip F. Etheridge, on or before December 15, 2005. The arbitrator was to issue his written decision within sixty days thereafter. Any motion to confirm or vacate the award of the arbitrator could be filed by a party within thirty days of the award; any such motion would be ruled on by this Court [151].

Of significance to the present Order are the terms of the arbitration that were agreed to by defendant Willie Burrell. Specifically, the parties agreed that a modified version of the American Arbitration Association's rules would be used for the arbitration; the rules agreed to by the parties were attached as Exhibit I to the Consent Order.

The rules for arbitration to which defendant Burrell agreed included, among other things, an agreement that she and the plaintiff would divide the costs of expenses incurred for the arbitration. That is, while the expenses for any witness would be borne by the

party producing such witness, "[a]ll other expenses of the arbitration...shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." Consent Order [151, **Ex.** 1 (Modified Proposed Rules for Arbitration) at 10, ¶ R-50].

Further, the arbitrator was empowered, in his Award, to "assess fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.... *Id.* at 9, ¶ R-43. If the parties "settle[d] their dispute during the course of the arbitration proceeding and, if the parties so requested, the arbitrator may set forth the terms of the settlement in a 'consent award.'" *Id.* at 9, ¶ R-44. In addition, "parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction...." *Id.* at 10, ¶ R-48(c).

## Outcome of Arbitration Proceeding and Refusal of Defendant Burrell to Pay Expenses

It is the Court's understanding that during the course of the arbitration proceeding, the dispute did settle. Among other things agreed to by the parties, defendant Burrell was to receive $175,000, in the form of a $100,000 payment on May 10, 2006 and a $75,000 payment on August 3, 2006. Although the plaintiff did receive this

first $100,000 payment, however, which is presently in her attorney's escrow account, she has thus far refused to pay her share of the expenses and fees incurred during the arbitration. Specifically, the arbitrator, the Honorable Philip Etheridge, has forwarded two letters that he received from defendant Burrell's co-counsel, Sean Mulroney. Both letters, which are attached to this Order, are dated June 20, 2006. One is from Mr. Mulroney and addressed to defendant Burrell; the second is also from Mr. Mulroney and addressed to Judge Etheridge.

The subject of both letters is defendant Burrell's refusal to authorize payment of expenses and fees out of the $100,000 first settlement payment, which is being held in her attorney's escrow account. According to these letters and the attached Settlement Statement, defendant Burrell owes Judge Etheridge $9,450 (February 6, 2006 invoice) and $950 (May 12, 2006 invoice) for his services. These letters and the Settlement Statement also indicate that defendant owes the court reporting service $497.50, $1,406.40, and $801.54, respectively, for the court reporter's services on February 1 and February 2, 2006 and for the arbitration transcript. Finally, the Statement indicates that defendant Burrell owes $8.05 to the State Bar of Georgia, which apparently furnished the facilities used during the arbitration, for copies that the Bar made for defendant

AO 72A
(Rev.8/82)

Burrell during the arbitration.[1]  Although the letter to Judge Etheridge indicates that defendant Burrell had "repeatedly" informed her attorney that she would pay the arbitration expenses directly to Judge Etheridge, as opposed to taking them from her attorney's escrow fund, this has not occurred.

**Discussion**

Arbitration is a valuable tool for the Court and for litigants. Indeed, its value has been recognized through the enactment of a statute by Congress and through abundant case authority recognizing its enforceability.  A substantial part of the value of arbitration is its ability to allow a litigant who is not wealthy to adjudicate a case in an efficient and cost-effective manner that will typically be much less expensive than would full-scale litigation.  Indeed, that consideration was a large part of the Court's reasoning in encouraging the parties to arbitrate.  Yet, it cannot be forgotten that it was not this Court that initiated the suggestion of an arbitration.  Rather, the record indicates that it was defendant Willie Burrell who initially filed a motion requesting that the case

---

[1] The Settlement Statement also indicates that defendant Burrell owes her attorneys a sizeable amount of money, including approximately two thousand dollars in expenses and almost $75,000 in attorney's fees.  The Court understands, from reading the letters, that counsel may file suit against the defendant should she continue to refuse to pay her attorney's fees.  Indeed, as her attorneys obtained a settlement of $175,000 for Ms. Burrell, who was the defendant in the action, they clearly performed a valuable service.

be arbitrated. Acting on that sensible suggestion, this Court then launched into a series of time-consuming telephone conferences and orders to effectuate defendant's request for arbitration.

Prior to the beginning of discussions concerning arbitration, it was apparent to this Court that a trial of this dispute, which was the next step in the litigation, would be unwieldy, extremely expensive to the parties, and unlikely to yield a satisfactory conclusion, as the documents that were to have been maintained by defendant Burrell, as the manager of the business, were in such a state of disarray that it would have been difficult for a finder of fact to make any sense of the dispute. Indeed, of the two parties, it would have been defendant Burrell who would have been most vulnerable at a trial. Unlike the plaintiff, who had able counsel and some apparent resources, the defendant's original attorneys had withdrawn and she would have been proceeding *pro se* at any trial. While Mr. Madonia was willing to represent defendant at an arbitration, he made it clear that he would not enter an appearance for purposes of a trial.

Accordingly, the ultimate agreement by the parties to an arbitration was a very helpful, and arguably an essential mechanism, for the defendant to survive financially this litigation. Thus, defendant's recalcitrance at paying the relatively modest fees of the arbitrator and court reporter, whose services made possible an

arbitration process that gave rise to a final settlement of $175,000 in defendant's favor, is particularly churlish. Leaving aside the equities of the situation, however, defendant agreed to bear her half of the arbitration expenses. This agreement was made part of a Court Order that this Court, in the exercise of its inherent authority over this matter, intends to see enforced.

Therefore, the Court **DIRECTS** the defendant Willie Burrell to pay to the arbitrator, court reporter service, and State Bar of Georgia the amounts previously set out in the attached Settlement Statement, by **FRIDAY, AUGUST 4, 2006.** Failure to so will cause the Court to initiate a more formal process to obtain payment of these fees, including the possibility of a contempt citation against the defendant.

To the extent that the defendant is willing to pay the arbitration expenses, but cannot resolve her dispute with her attorneys concerning the payment of their fee by **FRIDAY, AUGUST 4, 2006,** the Court suggests that the defendant and counsel enter into a partial agreement authorizing the release of sufficient funds to pay the expenses to the arbitrator, court reporter, and State Bar.

In summary, the Court directs defendant to make the described payment, either from her attorney's escrow fund or from other resources, to the Arbitrator, Court Reporting service, and State Bar, by **FRIDAY, AUGUST 4, 2006.**

11

SO ORDERED, this \_\_17\_\_ day of July, 2006.

*Julie Carnes*
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE